IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

**LINDA MORGAN-SELF,**                                    Civil No. 2:11-cv-00459-SU

                Plaintiff

        v.                                         **FINDINGS AND**
                                    **RECOMMENDATION**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security

                Defendant.

SULLIVAN, Magistrate Judge:

      Plaintiff Linda Morgan-Self ("Morgan-Self") seeks judicial review of the Social Security

Commissioner's final decision denying her application for Supplemental Security Income ("SSI")

payments under Title XVI of the Act. 42 U.S.C. §§ 1381-83f. This court has jurisdiction under 42

U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision should be

reversed and remanded for the immediate calculation and award of benefits.

///

///

///

1 - FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

Born in 1963, Ms. Morgan-Self first applied for benefits on May 17, 2005. Tr. 138-39.[1] This application was denied and she did not appeal. Ms. Morgan-Self filed a second application on November 30, 2006, alleging disability since May 10, 2005 (Tr. 141-42), due to fibromyalgia and chronic fatigue syndrome. Tr. 152. The Commissioner denied this application initially and upon reconsideration (Tr. 76-82; 87-90), and an Administrative Law Judge ("ALJ") held a hearing on October 5, 2009. Tr. 23-75. The ALJ subsequently found Ms. Morgan-Self not disabled on October 30, 2009. Tr. 12-22. The Appeals Council denied review of the matter on February 16, 2011. Tr. 1-3. This action made the ALJ's decision the final decision of the Commissioner, 20 C.F.R. § 410.670a, and Ms. Morgan-Self now appeals.

## FACTUAL BACKGROUND

The record before this court shows that Ms. Morgan-Self first reported musculokeletal pain in 1995. Tr. 651. She began seeing a fibromyalgia specialist, Dr. Laurie Martie, in March 2004, and received diagnoses of both fibromyalgia and chronic fatigue syndrome. Tr. 291. She continued regular treatment on a near-monthly basis with Dr. Martie until December 2006. Tr. 402. Ms. Morgan-Self had bunion surgeries and follow-up care for that condition throughout 2005. Tr. 510-831. Between April 2007 and January 2009, she received ongoing care from general practitioner Fredrick Tinio, M.D. Tr. 545-656. Dr. Tinio continued to diagnose fibromyalgia and noted various related symptoms (*id.*), and on February 27, 2008, Ms. Morgan-Self visited the Oregon Health & Science University fibromyalgia clinic, where her diagnosis was again confirmed. Tr. 560-69.

## STANDARD OF REVIEW

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on August 29, 2011 (Docket # 11).

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps to determine disability under the meaning of the Act. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)

At step one, the ALJ determines if the claimant is performing substantial gainful activity.

If she is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, she is not disabled. 20 C.F.R. §§ 416.909; 416.920(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the Commissioner's regulations. If it does, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 416.920(e); Social Security Ruling ("SSR") 96-8p.

At step four, the ALJ uses this information to determine if the claimant can perform her past relevant work. If the claimant can perform his past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, she is disabled. 20 C.F.R. §§ 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett*, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Yuckert*, 482 U.S. 137, 146 n.5; *Tackett*, 180 F.3d at 1098. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that

4 - FINDINGS AND RECOMMENDATION

exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d. at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 416.920(g); *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ found Ms. Morgan-Self's fibromyalgia and unspecified mood disorder "severe" at step two in the sequential proceedings. Tr. 14. The ALJ found these impairments did not meet or equal a listed disorder at step three, and found that Ms. Morgan-Self retains the RFC to perform light work,[2] with the following limitations: "She cannot stand or walk more than 4 hours in the work day; she can only occasionally climb, stoop, kneel, and crouch; she can frequently balance and crawl; she is limited to unskilled work; and she can have little public contact." Tr. 16. The ALJ found her unable to perform her past relevant work at step four, but found she could perform work in the national economy as a small products assembler, extruder machine operator, and hand-packer. Tr. 22. The ALJ therefore found Ms. Morgan-Self not disabled. *Id.*

## ANALYSIS

Ms. Morgan-Self challenges the ALJ's findings regarding: (1) her testimony; (2) the opinions of a reviewing and treating physician, as well as other medical sources; and (3) the lay witness testimony. She concludes the ALJ should have found her disabled.

## I.    Credibility

Ms. Morgan-Self asserts that the ALJ failed to give "clear and convincing" reasons for rejecting her testimony. Pl.'s Opening Br. 15.

---

[2]"Light" work entails "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

**A.     Credibility Standards**

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (*citing Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284.

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

**B.     Analysis**

The ALJ addressed Ms. Morgan-Self's credibility at several points in his RFC narrative. Tr. 17, 19-20. First he noted her alleged onset date (Tr. 17), and her work activity. Tr. 18-19. He also cited Ms. Morgan-Self's daily activities (Tr. 15), and specifically discussed her operation of a daycare center and caring for numerous dogs. Tr. 19. The ALJ characterized her medical care as

"conservative and routine" and found she failed to seek follow-up medical care. Tr. 19. The ALJ concluded that Ms. Morgan-Self's testimony "cannot be found sufficiently credible to serve as additive evidence to support a finding of disability," but found her credible "to the extent she would experience pain with prolonged periods of walking and/or standing and have difficulty interacting with others in a working environment." Tr. 20.

Ms. Morgan-Self challenges the ALJ's citation to her work and daily activities, "conservative" medical treatment, and self-reported "pain logs."

### 1.    Work Activity and Activities of Daily Living

The ALJ found Ms. Morgan-Self's symptom testimony not credible because she allegedly operated a daycare business, and cared for numerous dogs and children. Tr. 15, 19, 20.

I find that the ALJ misread the record and misapplied the relevant legal standards. An ALJ may consider a claimant's activities of daily living in his credibility analysis, *Smolen*, 80 F.3d at 1284, but the ALJ did not accurately consider these activities. Ms. Morgan-Self reported that, while she had a daycare license and watched two infants four and five days per week (Tr. 43-44), she performed this activity in part when her own children were home from school. Tr. 44. During these times her children helped her. *Id.* Ms. Morgan-Self also wrote that her older children help with unspecified younger children. Tr. 164.

While the reviewing court must generally defer to the ALJ's interpretation of a claimant's activities, *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001), the ALJ's finding is contradicted by Ms. Morgan-Self's own testimony, which is further supported by her physicians, discussed below. The ALJ's interpretation of Ms. Morgan-Self's daycare activity is not based upon the record and therefore should not be affirmed.

7 - FINDINGS AND RECOMMENDATION

Further, Ms. Morgan-Self's daily activities are limited.  The record shows that Ms. Morgan-Self reported supervising and caring for her children (Tr. 164), performing light household tasks, shopping weekly, paying bills and handling money,  watching television, and attending church.  Tr. 166-67.  Such activities may be consistent with a finding of disability, and one need not be "utterly incapacitated" to be disabled. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

For these reasons, the ALJ's findings regarding Ms. Morgan-Self's limited daily and work activities should not be affirmed.

## 2. Conservative Treatment

The ALJ found that Ms. Morgan-Self utilized "conservative and routine" treatment for her impairments, and concluded,  "this suggests [her] impairments do not result in significant functional limitation, which precludes her from engaging in basic work activity."  Tr. 19.

Ms. Morgan-Self challenges this finding by asserting that, "the course of treatment was conservative, but constant, including nearly monthly treatment visits with Drs. Marti, Earl, and Tinio, as one might expect for persistent fibromyalgia and chronic fatigue syndrome." Pl.'s Opening Br. 15.

Ms. Morgan-Self does not cite the administrative record in support of this proposition, but cites the Commissioner's Administrative Ruling addressing Chronic Fatigue Syndrome. *Id.*  Her indicated citation discusses evaluation of chronic fatigue syndrome, but makes no statement regarding treatment "one might expect." SSR 99-2p, "Titles II and XVI: Evaluating Cases Involving Chronic Fatigue Syndrome," *available at* 1999 WL 271569.  This authority does not discuss "conservative" treatment in managing Chronic Fatigue Syndrome, *id.*, and is therefore inapplicable

to Ms. Morgan-Self's challenge to the ALJ's finding that she utilized conservative treatment.

The ALJ's credibility determinations may consider a claimant's utilization of conservative treatment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). The record shows that Ms. Morgan-Self visited various practitioners frequently for her chronic fatigue syndrome and fibromyalgia conditions, receiving vitamins, thyroid, pain, and sleep medications. Tr. 288-94, 343-44, 350, 353-58, 370-90, 402-10. Ms. Morgan-Self also attended physical therapy for back pain in December 2005 and January 2006.[3] Tr. 834-37. The ALJ's characterization of this treatment as "conservative" is not based upon the record.

Ms. Morgan-Self also asserts that the ALJ discredited her testimony because she was "inconsistent" in following mental health treatment. Pl.'s Opening Br. 15 (citing Tr. 15, 19). The ALJ found that Ms. Morgan-Self was inconsistent in following treatment at Lifeways Mental Health Services. Tr. 19. These treatment notes show that she failed to attend therapy appointments on five occasions. Tr. 682-85, 687. However, these notes also show that she regularly attended therapy at all other times. The ALJ's finding on the matter is not based upon the record and therefore should not be sustained.

### 3.    "Pain Logs"

Ms. Morgan-Self asserts that the ALJ incorrectly cited her "pain logs" in rejecting her symptom testimony, and that this evidence "shows no pattern of improvement." Pl.'s Opening Br. 15. The ALJ found that her "pain logs indicate her pain as decreased throughout the past year." Tr. 19.

---

[3]Ms. Morgan-Self additionally attended physical therapy for foot pain associated with bunion surgery (Tr. 839-66), but she does not challenge the ALJ's findings regarding this impairment.

The record shows that Ms. Morgan-Self submitted "pain logs" to her attorney's office, indicating her generalized pain between July and December 2007 (Tr. 553-58), February 2008 and July 2008 (Tr. 217-19), between January 2009 and June 2009 (Tr. 238-39), and her headaches between January and June 2009.  Tr. 241-43.  Ms. Morgan-Self indicated incapacitating pain with an "xx" annotation and "severe" pain with an "x."  Ms. Morgan-Self indicated "x" on most dates in 2007 (Tr. 553-58), "xx" on all dates in 2008 (Tr. 217-19), and "x" for most dates between March 2009 and June 2009.  Tr. 238-39.

I find that this record does not support a generalized finding of "decreased" pain contradicting an allegation of disability.  The ALJ's finding regarding Ms. Morgan-Self's pain logs is not based upon the record, and should not be affirmed.

### C.    Credibility Conclusion

In summary, the ALJ's credibility analysis does not reflect the record, and should not be sustained.  The effect of the ALJ's errors is discussed below.

## III.    Medical Source Statements

Ms. Morgan-Self challenges the ALJ's reliance upon reviewing physician Mary Ann Westfall, M.D., and further asserts that the ALJ should have given greater weight to the opinion of treating physician Laurie Marti, M.D., nurse practitioner Cheryl Hryciw, and various unidentified mental health therapists.  Pl.'s Opening Br. 10-13.  She also cites the opinion of D. Earl, D.O.,[4]

---

[4]The record contains no original treatment notes submitted by Dr. Earl.  Instead, his notes are encapsulated in a "medical abstract" prepared by Columbia Basin Wellness Clinic.  Tr. 737-44, 746-47, 752, 756, 758, 761.  This document is prefaced by language stating that it does not constitute medical opinion evidence.  Tr. 730.  Though Dr. Earl's November 28, 2006, letter supports a finding of disability (Tr. 654, 761), it is clearly preceded by a disclaimer stating that the associated treatment notes in the medical abstract does not constitute opinion evidence.  Tr.

though she makes no specific legal argument.  Pl.'s Opening Br. 13.

A.      **Standards**

Disability opinions are reserved for the Commissioner.  20 C.F.R. § 416.927(e)(1).  When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than to that of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician's opinion in favor of an examining physician's opinion. *Id.* at 830.  The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  The opinion of a reviewing physician "cannot by itself constitute substantial evidence that justifies the rejection of a the opinion of either an examining physician *or* a treating physician."  *Lester*, 81 F.3d at 831 (emphasis original).

///

///

B.      **Analysis**

1.      **Reviewing Physician Mary Ann Westfall, M.D.**

Ms. Morgan-Self asserts that the ALJ "relied primarily" upon Dr. Westfall's opinion, and further asserts that Dr. Westfall's opinion is erroneous.  Pl.'s Opening Br. 10-11.  She does not articulate specific error in the ALJ's analysis of Dr. Westfall's opinion and associated medical

---

730.  In such circumstances, the court declines to further consider the matter.

records.  *Id.*

### i.    Dr. Westfall's Opinion

Dr. Westfall reviewed Ms. Morgan-Self's medical record on March 22, 2007, for Disability

Determination Services.[5]  Tr. 522-29.  She concluded that Ms. Morgan-Self could occasionally lift

twenty pounds, frequently lift ten pounds, could stand and sit at least six hours in an eight-hour

workday, and was not limited in pushing and pulling.  Tr. 523.  Dr. Westfall assessed occasional

limitations in climbing, balancing, kneeling, and crouching, and indicated that Ms. Morgan-Self

should never stoop or crawl (Tr. 524), and assessed no manipulative, visual, communicative, or

environmental limitations.  Tr. 525-26.  She discussed Ms. Morgan-Self's daily activities, including

caring for her children, cleaning the house "as best she can," preparing quick meals, shopping, and

driving, and noted Ms. Morgan-Self's report that she cannot vacuum or mop and must rest, which

extends these tasks to five to six hours.  Tr. 527.  Dr. Westfall also noted Ms. Morgan-Self's report

of difficulty holding her arms out to care for her hair, and that she goes to church, shops every week,

can walk twenty-five feet, can lift ten pounds, and can sit one hour, and concluded that "objective

findings do not support level of disability alleged."  *Id.*    Finally, Dr. Westfall cited examining

physician Dr. Wang's opinion that general deconditioning, rather than a specific impairment, is

likely limiting to Ms. Morgan-Self.  Tr. 528.

### ii.    The ALJ's Findings Regarding Dr. Westfall

The ALJ summarized the medical evidence, including the opinion of James Randall, M.D.,

---

[5]Disability Determination Services is a federally-funded state agency that makes
eligibility determinations on behalf and under the supervision of the Social Security
Administration.  20 C.F.R. § 416.903.

(Tr. 14), treating physician Dr. Marti, and examining physician Samuel Wang, M.D.  Tr. 17-18.  The ALJ also discussed Dr. Westfall's opinion, noting that Dr. Westfall opined that Ms. Morgan-Self could occasionally lift twenty pounds, frequently lift ten pounds, could walk, stand and sit about six hours each in an eight-hour day, as well as Dr. Westfall's other limitations.  Tr. 18. The ALJ concluded:

> Though Dr. Westfall is neither an examining nor a treating physician, she is a Rehabilitative Specialist, which provides her with knowledge, training, and a perspective not shared by other physicians of record and which could reasonably be expected to give her great insight into the limitations imposed by the claimant's impairments. However, the Dr. [sic] did not take into full account [Ms. Morgan-Self's] standing and walking limitations or her social limitations.  Tr. 18.

### iii.    Analysis

The court first notes that the ALJ's language does not unequivocally accept Dr. Westfall's opinion.  Further, the ALJ's RFC assessment restricted Ms. Morgan-Self to standing and walking no more than four hours per day, and precluded her from public contact.  Tr. 16.  This RFC encompasses greater limitations than those expressed by Dr. Westfall (Tr. 523-26).  Ms. Morgan-Self's inference that the ALJ based his own findings upon Dr. Westfall's opinion is therefore not based upon the record.

Ms. Morgan-Self also argues that the ALJ's reliance upon Dr. Westfall's opinion is erroneous because Dr. Westfall did not have opportunity to review later medical records produced by treating physician Dr. Tinio, nurse practitioner Cheryl Hryciw, or unspecified providers at the Good Shepherd Clinic.  Pl.'s Opening Br. 10.  Ms. Morgan-Self provides no legal authority for this assertion.

The relevant matter is whether the ALJ reviewed these records, not whether Dr. Westfall herself reviewed them. While the ALJ may not rely upon a reviewing physician's opinion contradicted by the record as a whole, *Lester*, 80 F.3d at 831, Ms. Morgan-Self does not presently explain the manner in which the ALJ's citation to Dr. Westfall's opinion detracted from the ALJ's review of the remaining record. She indicates that Dr. Tinio and Nurse Hryciw diagnosed fibromyalgia with associated symptoms, but she does not point to a diagnosis or work-related limitation articulated by Dr. Tinio and Nurse Hryciw which Dr. Westfall omitted. Pl.'s Opening Br. 10-11. She therefore fails to establish any discrepancies between the opinions of Dr. Tinio, Nurse Hryciw, and Dr. Westfall, and her argument that Dr. Westfall erroneously reviewed the record therefore fails.

In summary, Ms. Morgan-Self establishes no reversible error in the ALJ's citation to Dr. Westfall's opinion. However, the ALJ should have distinctly addressed other physician opinions submitted to the record after Dr. Westfall issued her March 22, 2007 opinion.

### 2.    Treating Physician Laurie Marti, M.D.

Ms. Morgan-Self separately challenges the ALJ's findings regarding treating physician Dr. Marti's opinion. Pl.'s Opening Br. 12.

Dr. Marti treated Ms. Morgan-Self between March 1, 2004 (Tr. 291), and December 14, 2006. Tr. 402. During this time Dr. Marti assessed iron deficiency, insomnia, candida, tension headaches, "thyroid resistence," Epstein-Barr virus, testosterone deficiency, adrenal insufficiency, and pain. Tr. 288-294. She additionally assessed "immune dysfunction," vitamin B12 deficiency, ovarian dysfunction, and clotting dysfunction (Tr. 404), nutritional deficiencies (Tr. 410), and an unidentified condition noted as "MCS." Tr. 408. Dr. Marti also performed numerous laboratory

tests.  Tr. 296-40.

On November 13, 2006, Dr. Marti stated that she has treated Ms. Morgan-Self since November 2005, and that Ms. Morgan-Self has "both Fibromyalgia and Chronic Fatigue Syndrome." Tr. 341.  Dr. Marti wrote:

> Both of these conditions are associated with pain and fatigue symptoms which worsen when dealing with stressful situations.  Due to increased stress at home, she is experiencing increased memory loss and poor concentration.  Therefore, it is my recommendation that she avoid stressful environmental conditions since it makes her conditions worsen leading to her feeling very ill.  *Id.*

The ALJ noted Dr. Marti's fibromyalgia diagnosis and prescription of Neurontin and narcotics.  Tr. 17.  The ALJ also cited Dr. Marti's November 13, 2006, note stating that Ms. Morgan-Self should avoid stressful situations, and concluded:

> Dr. Marti's opinion was given very little weight because it is not in accordance with the claimant's activities of daily living as shown through her ability to operate a daycare center on her own. Furthermore, there was very little explanation about the conclusions she made concerning the claimant's limitations.  Tr. 17.

The ALJ's findings regarding Ms. Morgan-Self's day care center is not based upon the record, as discussed above.  *Supra*, 7-8.  While the ALJ may reject a physician opinion to the extent it conflicts with a claimant's reported activities, *Morgan v. Comm'r*, 169 F.3d 595, 601-02 (9th Cir. 1999), the ALJ's citation to the daycare activity is not based upon the record, and therefore does not justify rejecting Dr. Marti's opinion.

The ALJ's finding that Dr. Marti failed to explain her conclusion is also not based upon the record.  As noted, Dr. Marti treated Ms. Morgan-Self between March  2004 and December 2006.  During this time Dr. Marti produced chart notes documenting Ms. Morgan-Self's complaints, her

15 - FINDINGS AND RECOMMENDATION

own clinical impressions, and recommended treatment.  Tr. 288-94, 404-10.  The ALJ's finding that

Dr. Marti's opinion was unsupported is therefore not based upon the record.

In summary, the ALJ erroneously evaluated Dr. Marti's opinion.  The effect of this error is

discussed below.

### 3.     Nurse Practitioner Cheryl Hryciw

Ms. Morgan-Self also alleges that the ALJ should have given greater weight to the opinion

of nurse practitioner Cheryl Hryciw.  Pl.'s Opening Br. 13.

Nurse Hryciw evaluated Ms. Morgan-Self on one occasion, February 27, 2008, at Oregon

Heath & Science University's fibromyalgia clinic.  Tr. 560-65.  Nurse Hryciw stated that this

evaluation "consisted of a fibromyalgia-focused history and physical, evaluations by a physical and

occupational therapist, and a 1-hour education session on the nature and treatment of fibromyaliga."

Tr. 560.  She subsequently reiterated Ms. Morgan-Self's history and describes a physical

examination (Tr. 560-62), and diagnosed fibromyalgia, hypotension, migraine headaches,

cervicalgia (neck pain), and episodes of cognitive dysfunction.  Tr. 563.  Nurse Hryciw felt Ms.

Morgan-Self's cognitive dysfunction could be due to side effects of Neurontin, Sequerol, or both.

*Id.*  In conclusion, Nurse Hryciw made various medication, counseling, physical, and occupational

therapy recommendations.  Tr. 564.  Nurse Hryciw assessed no work-related limitations.

Ms. Morgan-Self now asserts that the ALJ rejected Nurse Hryciw's opinion "for the oft

reported reason that Plaintiff allegedly operated a daycare center."  Pl.'s Opening Br. 13 (citing Tr.

18).  Ms. Morgan-Self's citation does not reflect this allegation: the ALJ did not directly discuss

Nurse Hryciw's opinion at any point in his decision.

A nurse practitioner's opinion is an "other" medical source under the Commissioner's

regulations.  20 C.F.R. § 416.913(d)(1).  Such sources may show the severity of a claimant's impairment and how it affects her ability to work.  20 C.F.R. § 416.913(d).  Nurse Hryciw's letter supports Ms. Morgan-Self's report of her daily activities: Nurse Hryciw specifically noted that Ms. Morgan-Self reported inability to walk more than two miles, exhaustion after walking one block, and inability to climb more than two flights of stairs.  Tr. 562.  Nurse Hryciw also noted Ms. Morgan-Self's reported widespread pain, which varies from a "four" to a "ten" on a one-to-ten scale. Tr. 560.

Nurse Hryciw's opinion therefore supports Ms. Morgan-Self's allegation of disability, and specifically addresses the severity of Ms. Morgan-Self's impairments.  The ALJ must explain rejection of all relevant and probative evidence, *Vincent v. Heckler*, 739 F.3d 1393, 1395 (9th Cir. 1984), and the ALJ consequently erred in failing to discuss Nurse Hryciw's opinion.

### 4.    Mental Health Therapists

Finally, Ms. Morgan-Self argues that the opinions of "other therapists of record . . . Hartley,[6] and those at Lifeways should have been accorded the weight envisioned in the Rulings." Pl.'s Opening Br. 13.  Without explanation, she cites the Commissioner's administrative ruling addressing "other" medical sources under the Commissioner's regulations.  *Id.,* citing SSR 06-3p, "Titles II and XVI: Considering Opinions and Other Evidence from Sources who are not "Acceptable Medical Sources," in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies," *available at* 2006 WL 2329939.  Ms. Morgan-Self does not identify the portions of the record she alleges the ALJ erroneously reviewed, and does not

---

[6]This court cannot determine to whom "Hartley" refers.

17 - FINDINGS AND RECOMMENDATION

identify the effect of any such error, concluding "in the interest of space, these other source opinions need not be discussed further here." Pl.'s Opening Br. 13. She does not return to the argument. Pl.'s Reply Br.

This court need not address arguments presented without specificity. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (rejecting claimant's challenge to the ALJ's findings where claimant "offered no theory, plausible or otherwise," and pointed to no evidence of record supporting his claim). However, my own review of approximately 150 pages of treatment notes addressing Ms. Morgan-Self's counseling at Lifeworks Mental Health Services between January 2007 and August 2009, shows that Ms. Morgan-Self attended therapy and appeared depressed at times. Tr. 566-645, 681-717, 875-883. Although these notes do not show additional work-related limitations omitted by the ALJ, they are significant because they support Ms. Morgan-Self's allegations of depression and fatigue. The ALJ noted these reports, and provided no reason for rejecting them. Tr. 17. The ALJ therefore should have included this evidence in his RFC assessment.

///

## C.    Conclusion: Medical Source Statements

In summary, the ALJ erred failing to distinctly address the medical evidence submitted to the record after Dr. Westfall's March 2007 opinion, improperly evaluated the record pertaining to Dr. Marti's opinion, and failed to find that the opinons of Nurse Hryciw and Lifeways therapists were consistent with Ms. Morgan-Self's own testimony. The effect of these errors is addressed below.

## III.    Lay Testimony

Ms. Morgan-Self asserts that the ALJ improperly addressed testimony submitted by her former husband, Jeffrey Self, and daughter, Briana Morgan. Pl.'s Opening Br. 13-14.

### A.    Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 416.945(d); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2008). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

### B.    Analysis

#### 1.    Jeffrey Self

Ms. Morgan-Self's ex-husband, Jeffrey Self, testified at Ms. Morgan-Self's hearing before the ALJ. Tr. 59-67. He first testified that they were recently divorced, that he was confused as to whether he was currently dating Ms. Morgan-Self, and that he was seeing her approximately one time per week in the four months before the hearing. Tr. 61-63. Mr. Self testified that Ms. Morgan-Self "has got some serious problems," that "she's kind of a walking zombie most of the time," and that she "she's not always - she's not there. I mean, I have to explain things more than once. She's just not there." Tr. 64. Her energy level is "terrible" and she "doesn't have emotions - she's out in space most of the time, but mostly depression emotion. She's not there." Tr. 65. Mr. Self stated that Ms. Morgan-Self appears to do little with the babies she supervises in her daycare. *Id.*

The ALJ noted Mr. Self's testimony regarding Ms. Morgan-Self's energy level, and

19 - FINDINGS AND RECOMMENDATION

concluded that Ms. Morgan's reported activities contradicted Mr. Self's testimony. Tr. 19. The ALJ may reject lay testimony contradicted by a claimant's report of her activities. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). However, the ALJ incorrectly addressed Ms. Morgan-Self's activities, as discussed above. The ALJ's conclusions regarding Mr. Self's testimony, to the extent he relied upon Ms. Morgan-Self's activities, is therefore erroneous.

## 2.    Briana Morgan

Ms. Morgan-Self's daughter, Briana Morgan, submitted a letter to the record on December 20, 2008. Tr. 230-31. Ms. Morgan wrote that she lived with her mother until "a couple weeks ago," and that Ms. Morgan-Self initially complained of headaches and dizziness. Tr. 230. Ms. Morgan-Self frequently complains of pain, and is "worn out very fast." *Id.* She is also "always forgetting things even if you just got done telling her," and "has problems reading." Tr. 230-31. Ms. Morgan-Self has lost weight, and is no longer outgoing. Tr. 231. She requires help from her younger children in lifting items, and cannot stand or sit for long periods of time. *Id.*

The ALJ noted Ms. Morgan's statement that Ms. Morgan-Self reported fatigue and memory problems, as well as lifting restrictions. Tr. 18. The ALJ found this testimony contradicted by Ms. Morgan-Self's reported activities. *Id.* As noted, the ALJ incorrectly addressed Ms. Morgan-Self's activities, and therefore cannot now rely upon Ms. Morgan-Self's activities in rejecting Ms. Morgan's testimony. These findings should not be sustained.

## 3.    Joyce Challis

Ms. Morgan-Self's initial argument cites "three" lay witnesses, but does not identify or address testimony promulgated by her mother, Joyce Challis, explain error pertaining to Ms. Challis' testimony, or explain the effect of any alleged error. Ms. Morgan-Self subsequently

addresses Ms. Challis' testimony in her Reply. Pl.'s Reply Br., 10. This court need not consider arguments raised for the first time in a reply brief, *In re Rains*, 428 F.3d 893, 902 (9th Cir. 2000) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 n.4 (9th Cir. 2000)).

The court nonetheless briefly addresses Ms. Challis' testimony. Ms. Challis submitted a letter to the record on December 20, 2008. Tr. 223-26. She described Ms. Morgan-Self's weight loss and reports of fatigue and pain. Tr. 223-24. She also described memory problems, and stated that Ms. Morgan-Self requires assistance in completing household tasks and yard work. Tr. 225. The ALJ found Ms. Challis' testimony contradicted by Ms. Morgan-Self's daily activities. Tr. 18-20. As discussed above, the ALJ erred regarding Ms. Morgan-Self's own testimony, and therefore cannot now rely upon that testimony in rejecting lay witness testimony. The ALJ's findings regarding Ms. Challis should not be sustained.

### 4.    Other Lay Witness Findings

The ALJ also noted that because Mr. Self and Ms. Morgan "have a personal relationship with the claimant and lack the expertise and possibly the motivation to offer an objective or functional assessment, their statements regarding the claimant's symptoms are considered with caution." Tr. 19. This cautionary statement is not tantamount to rejecting their testimony. Regardless, such reasoning is not an acceptably germane reason for rejecting lay testimony. Lay witness testimony is valuable because it is based upon the witness's observation of a claimant's functioning, *Dodrill*, 12 F.3d at 918-919, and the Ninth Circuit clearly instructs that an ALJ may not reject lay testimony simply because the lay witness is not "knowledgeable in the medical and/or vocational field." *Bruce*, 557 F.3d at 1116. The ALJ's reasoning on this point therefore should not be sustained.

**IV.    Remand**

The ALJ erroneously evaluated Ms. Morgan-Self's testimony, Dr. Marti's opinion, and failed to consider that Nurse Hryciw's opinion and the Lifeways treatment notes support Ms. Morgan-Self's testimony.   The ALJ's RFC analysis was therefore flawed, and the ALJ consequently made additional errors in his step four and five findings.   His decision cannot be sustained.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*cert. denied*, 531 US 1038 (2000)).   The issue turns on the utility of further proceedings.   A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)).   The court may not award benefits punitively, and must conduct a credit-as-true analysis to determine if a claimant is disabled under the Act.  *Id.* at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."  *Id.*   The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision.  *Connett v. Barnhart*, 340 F.3d

871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F2d at 348).  The reviewing court declines to credit testimony when "outstanding issues" remain.  *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ analysis of testimony submitted by Ms. Morgan-Self, the lay testimony, and various medical opinions is  erroneous for the reasons established above.  The ALJ's subsequent RFC assessment and hypothetical questions to the vocational expert at step five in the sequential disability analysis are therefore not based upon the proper legal standards.

In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second prong of the remand analysis.  *Strauss*, 635 F.3d at 1138.  Neither party asserts that the record is insufficient, and the court finds the record sufficiently developed.

Therefore the court must finally determine whether the record clearly requires an award of benefits after the improperly rejected evidence is credited.  *Id.*  Specifically, Ms. Morgan-Self testified that she is weak and dizzy daily (Tr. 39-40), can walk a half block (Tr. 58), lift no more than ten pounds (Tr. 168), and can pay attention no longer than five to ten minutes.  Tr. 168.  Dr. Marti opined that Ms. Morgan-Self experiences fatigue, memory loss, and poor concentration.  Tr. 341.  Finally, the lay witnesses testified that Ms. Morgan-Self is depressed (Tr. 65), without energy (Tr. 224), has poor memory (Tr. 225), is "worn out fast," forgetful, and has difficulty reading. Tr. 230.

The vocational expert testified that an individual with limitations due to pain, fatigue, and attention and concentration deficits, who was additionally absent from the workplace four to eight hours per week at unpredictable intervals, would be unable to perform competitive employment.  Tr. 72.  He particularly affirmed that the combined effect of Ms. Morgan-Self's reported pain,

fatigue, attention, and concentration deficits would preclude such employment. *Id.* The opinions of Dr. Marti, Nurse Hryciw, and the Lifeways mental health therapists also support this conclusion.

The improperly omitted evidence therefore establishes that Ms. Morgan-Self is disabled at step five in the sequential proceedings. Consequently, this testimony should be credited and Ms. Morgan-Self should be found disabled under the Commissioner's regulations.

## RECOMMENDATION

The Commissioner's decision that Ms. Morgan-Self was not entitled to benefits under Title XVI of the Social Security Act is not based upon correct legal standards nor supported by substantial evidence. The Commissioner's decision should be reversed and remanded for the immediate calculation and award of benefits.

///

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due by 5/29/2012. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within 14 days. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

IT IS SO ORDERED.

DATED this 9th day of May, 2012.

 /s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge

24 - FINDINGS AND RECOMMENDATION